ILLINOIS CENTRAL GULF RAILROAD
COMPANY, Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.

No. 83–1124.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1983.

Decided Nov. 8, 1983.

As Amended Nov. 14, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 13, 1984.

Howard D. Koontz, Chicago, Ill., for peti-
tioner.

John J. McCarthy, Jr., I.C.C., Wash-
ington, D.C., for respondents.

Before CUMMINGS, Chief Judge, and
BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This case involves a challenge to a deci-
sion of the Interstate Commerce Commis-
sion (ICC) conditionally certifying various
states to regulate intrastate rail carriage
within their borders. For the reasons stat-
ed below, we affirm.

Prior to 1980, state regulatory bodies had the primary responsibility for intrastate rail regulation. In 1980, Congress passed the Staggers Rail Act of 1980, Pub.L. No. 96–448, 94 Stat. 1895 (1980) (codified in scattered sections of 11, 45, and 49 U.S.C.) reallocating jurisdiction over intrastate rail regulation between state and federal agencies. Section 214(b)(6) of the Staggers Act (49 U.S.C. § 11501(b)(6)) prohibits the states from exercising any jurisdiction over general rate increases, inflation-based increases, or fuel surcharges approved by the ICC. As to other intrastate matters, section 214(b)(1) provides that states may exercise jurisdiction only if in accordance with federal standards, specifically the provisions of the Interstate Commerce Act (ICA). Section 214(b)(2) required each state authority wishing to continue to exercise jurisdiction over these other intrastate matters to submit to the ICC, no more than 120 days after October 1, 1980, the standards and procedures to be used by the state authority in exercising such jurisdiction.

Section 214(b)(3)(A), which is at the heart of the controversy in this case, prescribes the action to be taken by the ICC upon receipt of the state standards and procedures. Section 214(b)(3)(A) provides in full:

> Within 90 days after receipt of the intrastate regulatory rate standards and procedures of a State authority under paragraph (2) of this subsection the Commission shall certify such State authority for purposes of this subsection if the Commission determines that such standards and procedures are in accordance with the standards and procedures applicable to regulation of rail carriers by the Commission under this title. If the Commission determines that such standards and procedures are not in such accordance, it shall deny certification to such State authority, and such State authority may resubmit new standards and procedures to the Commission for review in accordance with this subsection.

Under section 214(b)(4)(A), certification is to last for a period of five years.

Forty states, including Indiana, sought certification as reported by the ICC in its decision of April 22, 1981, in *State Intrastate Rail Rate Authority*—P.L. 96–448, Ex Parte No. 388. On page 4 of that decision, the ICC stated:

> Under Section 214 we have an affirmative obligation to certify a State authority once we determine that the standards and procedures submitted by the States are in accordance with Federal law. We have tried to keep the process as simple as possible. However, based on the present record, we cannot make the findings required by the law.

The ICC did find, however, that each state authority had made a good faith expression of its intention to comply with federal standards. For this reason, rather than deny certification, it decided to certify the forty states conditionally. Each conditional certification originally was to expire by June 29, 1981, unless the states made further filings of revised standards and procedures. This June deadline was later extended to allow the state authorities more time to make the filings.

Thirty-six states filed further material with the ICC. After reviewing the submissions, the ICC still found itself without sufficient information to certify any state unconditionally. In a decision on January 25, 1982, the ICC extended the conditional certification for the thirty-six states, and, after suggesting that it may have failed to provide the states with sufficient guidance to conform to federal law, set down a guide to the more significant federal standards and procedures.

Additional state filings were made in response to the January 1982 decision, and more guidance has been provided since that time. Nevertheless, as of the time of oral argument, virtually all of the thirty-six states, including Indiana, remain certified only on a conditional basis.[1] The certifica-

---

1. At oral argument, counsel for the ICC stated that Virginia had been certified unconditionally, and that Illinois and Florida had been offered unconditional certification but needed to work out some problems. Several other states,

tion process continues as of the date of this opinion.

The appellant Illinois Central Gulf Railroad (ICG) became involved in this case in December 1981, when the Indiana Power & Light Company (IP & L) filed a complaint with the Public Service Commission of Indiana, alleging that a switching charge on coal published by the ICG was excessive. After holding hearings, the Indiana commission ordered ICG to reduce its switching charge to $13.08 per car on past shipments and to apply a rate of $13.48 per car on and after October 1, 1982. Following the Indiana commission's denial of ICG's administrative appeal, the ICG filed a petition for review with the ICC. In its petition, ICG argued that the conditional certification of state authorities was invalid under the Staggers Act, and that therefore the Indiana Public Service Commission lacked subject matter jurisdiction to hear IP & L's complaint, and that even if the Indiana commission had jurisdiction to hear the complaint, it did not have jurisdiction to order ICG to reduce a switching charge below the October 1, 1980, level.

In January 1983, the ICC rendered a decision on ICG's petition. *Petition for Review of a Decision of the Public Commission of Indiana,* ICC No. 29020 (Jan. 18, 1983). The ICC agreed with ICG that the Indiana commission could not order a switching charge below the October 1, 1980 ($32.49 per car) level because IP & L's complaint had not been filed within 180 days of October 1, 1980, as required by the Staggers Act. However, the ICC also concluded that the conditional certification of the Indiana commission had been lawful, and denied that portion of the ICG's petition challenging the subject matter jurisdiction of the Indiana commission. It is from this denial that ICG appeals.

Our main task on this appeal is to determine the lawfulness of the ICC's conditional certification of Indiana and the other states. However, before we can do this we must find that we have jurisdiction over ICG's petition for review. The ICC claims that we do not, on the ground that ICG's petition is untimely. We hold that we do have jurisdiction to consider the validity of the ICC's conditional certification scheme.

■ The Administrative Orders Review Act ("Hobbs Act") requires a petition to review a final order of an administrative agency to be brought within sixty days of the entry of the order. 28 U.S.C. § 2344 (1976).[2] This sixty-day time limit is jurisdictional in nature and may not be enlarged by the courts. *Natural Resources Defense Council v. Nuclear Regulatory Commission,* 666 F.2d 595, 602 (D.C.Cir.1981). The purpose of the time limit is to impart finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of those who might conform their conduct to the administrative regulations. *Id.* at 602.

In the present case, the ICG had a chance to challenge the ICC's decision to grant conditional certification to Indiana and the other states, but it chose not to do so.[3] Now, almost two years later, it amounts what is essentially a collateral attack on the validity of the ICC's decision. Ordinarily such an attack would be barred by the sixty-day time limit of 28 U.S.C. § 2344. *See Atchison, Topeka and Santa Fe Railway v. ICC,* 687 F.2d 912, 918 (7th Cir.1982); *Microwave Communications, Inc. v. FCC,* 515 F.2d 385 (D.C.Cir.1974). In this case, however, there are special circumstances which we think make the sixty-day time limit inapplicable.

■ In *Functional Music, Inc. v. FCC,* 274 F.2d 543 (D.C.Cir.1958), the District of

---

he stated, were close to being certified unconditionally.

**2.** 28 U.S.C. § 2344 reads:
On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party ag-

grieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

**3.** ICG does not contend that it was unaware of the ICC decision in April of 1981.

Columbia Circuit found jurisdiction to consider, in a proceeding not begun until late 1957, the validity of FCC regulations formulated in 1955. The court explained:

> As applied to rules and regulations, the statutory time limit restricting judicial review of Commission action is applicable only to cut off review directly from the order promulgating a rule. It does not foreclose subsequent examination of a rule where properly brought before this court for review of further Commission action applying it. For unlike ordinary adjudicatory orders, administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.

*Id.* at 546, *quoted in Geller v. FCC,* 610 F.2d 973, 978 (D.C.Cir.1979) (court found jurisdiction to determine whether rules promulgated five years earlier were still in the public interest). Although there are differences between the *Functional Music* and *Geller* cases and the case before us, those two cases do provide us with instruction on the following point: because an administrative order or regulation which may have appeared valid at one time may not be valid, a statutory time limit on judicial review cannot cut off forever all review of administrative decisions. In the present case, the decision being challenged was supposed to be a temporary measure designed to maintain the status quo until the ICC had enough information to make a more permanent decision. Apparently, no one had any reason to challenge the decision at the time it was made; as a short-term measure, the conditional certification scheme was unlikely to have much impact on intrastate rail regulation. Now that conditional certification has lasted more than two years—nearly half the normal five-year term authorized by the Staggers Act—there is greater reason to call into question the validity of the conditional certification scheme. Accordingly, we hold that under the unusual circumstances of this case, the statutory time limit restricting judicial review does not preclude us from reviewing the validity of Indiana's conditional certification.

Turning to the merits of the case, ICG's basic argument is that by certifying states on a conditional basis, the ICC exceeded its authority under the plain language of section 214 of the Staggers Act. The ICC responds by contending that it was simply carrying out the purposes of the Staggers Act, and that its decision was reasonable and should not be overruled in the absence of statutory language requiring a contrary result. We agree with the ICC.

Both the Supreme Court and this court have repeatedly recognized the need to give administrative agencies latitude to effectuate the purpose of their authorizing statutes. "We are, in the absence of compelling evidence that such was Congress' intention, unwilling to prohibit administrative action imperative for the achievement of an agency's ultimate purpose." *Gibbons v. United States,* 660 F.2d 225, 230 (7th Cir.1981) (quoting *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 780, 88 S.Ct. 1344, 1367, 20 L.Ed.2d 312 (1968)). As we acknowledged in *Gibbons,* Congress has specifically declared that the ICC's authority is not limited by specific statutory enumerations in 49 U.S.C. § 10321(a):

> The Interstate Commerce Commission shall carry out this subtitle. Enumeration of a power of the Commission in this subtitle does not exclude another power the Commissioner may have in carrying out this subtitle.

ICC decisions not subject to formal rulemaking procedures, such as the one in this case, must be upheld as long as they are within the constitutional and statutory authority of the ICC and are not arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2) (1976); *Gibbons v. United States,* 660 F.2d at 231–32. Thus, in the *Gibbons* case, we upheld the power of the ICC to set compensation for temporary "permissive" use of lines of railroad where such action, while not expressly authorized by any statute, was reasonably calculated to keep service operating on the railroad lines

in question. *See also United States v. Chesapeake & Ohio Railway,* 426 U.S. 500, 96 S.Ct. 2318, 49 L.Ed.2d 14 (1976) (pursuant to its statutory mandate to protect the public from unjustified increases in transportation costs, the ICC may, as a condition for not suspending and subsequently investigating the lawfulness of a proposed tariff, require the railroads to devote the additional revenues to a need which is alleged to justify the increase).

In this case, we are persuaded that the ICC was acting within its authority to administer the Staggers Act when it elected to certify the states on a conditional basis. This is not a case, as ICG contends, Pet. Brief at 7–9, where Congress has clearly spelled out exactly how the ICC should handle the certification process and left the ICC with no discretion in the matter. Rather, it is a case where Congress has left a gap in its legislation, and the ICC has exercised its discretion in filling that void. Specifically, Congress instructed the ICC to certify state authorities "if it determines that [their] standards and procedures are in accordance with" federal · standards and procedures, and to deny certification "if it determines that standards and procedures are not in such accordance." However, Congress failed to provide the ICC with instructions in the event that the ICC was unable, due to insufficient information, to make either determination. This is exactly what happened in this case. Under these circumstances, the ICC had to exercise some discretion, and we must uphold its actions unless we determine them to be arbitrary, · capricious, or an abuse of discretion.[4]

We have no reason to hold that the ICC's decision to certify conditionally was arbitrary, capricious, or an abuse of discretion. At the time it was implemented, conditional certification was a reasonable solution to a practical problem that apparently had not been anticipated by Congress.[5] As the ICC found in its review of the April 1981 decision:

> [A]s a practical matter, a denial of certification would have resulted in a hiatus of State regulation in those States which expressed a genuine intent to conform to ICA standards. We cannot conclude that Congress intended such a result producing confusion on the part of existing and potential litigants in intrastate rail rate matters.

In enacting section 214 of the Staggers Act, Congress clearly envisioned a national system of regulation in which state regulatory bodies acting in conformity with federal standards would play a major role. We hold that in deciding to certify state regulatory bodies on a conditional basis rather than denying them jurisdiction altogether, the ICC was taking reasonable steps, within its authority, to provide a smooth transition (or at least to avoid a rough one) from the old system of regulation to the new one envisioned by the Staggers Act.

As we indicated earlier in our opinion, however, *see supra* p. 961, some administrative decisions which are justified when first rendered may become less justified with the passage of time. *See Geller v. FCC,* 610 F.2d 973 (D.C.Cir.1979). The decision at issue here may be one of those decisions. The conditional certification scheme was implemented as a temporary, emergency measure to maintain the status quo until the ICC could acquire more information, and thus avoid a confusing and disruptive hiatus in state regulation. As such, it was a valid exercise of the ICC's discretionary power, as we have just held. Over two years later, however, conditional

---

4. We recognize that it is possible to read section 214(b)(3)(A) as requiring the ICC to deny certification under the circumstances of this case. Nevertheless, the ICC's interpretation is at least as reasonable and is entitled to substantial deference. *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981).

5. Congress probably anticipated that a few states might lose jurisdiction over intrastate regulation upon denial of certification and then might regain it upon certification. However, it seems unlikely that Congress contemplated the situation where all, or virtually all, states were denied certification, with jurisdiction passing to the ICC only to return to individual states at various times over an extended period.

certification may no longer be justified; it would seem that this period of time would be adequate for the various state regulatory bodies to provide the ICC with information sufficient to make a decision to grant or deny certification, and for the ICC to process that information and make such a decision. We must keep in mind that, while in enacting the Staggers Act Congress clearly did intend for state regulatory bodies to play a major role in rail regulation, it intended that they do so only if in conformity with federal standards. As the situation exists now, many states are regulating intrastate rail carriage without having established that they are doing so in conformity with federal standards. While we are not prepared at this time and on this record to say that the conditional certification scheme is now invalid, we believe it appropriate that the ICC should take steps necessary to expedite the certification process and bring an end to conditional certification.

For the reasons stated in this opinion, we affirm the decision of the ICC upholding the authority of the ICC to conditionally certify state regulatory bodies for intrastate rail regulation pursuant to section 214 of the Staggers Act.