STATE OF TEXAS, Petitioner,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

Nos. 83–4318, 83–4542.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1985.

Rehearing and Rehearing En Banc Denied Feb. 27, 1985.

---

Jim Mattox, Atty. Gen. of Tex., Walter D. Davis, David R. Richards, James R. Meyers, Asst. Attys. Gen., Austin, Tex., for petitioner.

William French Smith, Atty. Gen., John P. Fonte, John J. Powers, III, U.S. Dept. of Justice, John Broadley, Gen. Counsel, H. Glenn Scammel, Ernest B. Abbott, Attys., I.C.C., Washington, D.C., for respondents.

Megan K. Ricke, Peter Mark Lee, St. Paul, Minn., for intervenor Burlington Northern.

Hugh L. McCulley, Houston, Tex., for intervenor Southern Pacific Trans. Co.

ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

(Opinion April 23, 5 Cir., 1984, 730 F.2d 409)

Before RUBIN, JOHNSON, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Having fully considered the application for rehearing en banc filed jointly by Interstate Commerce Commission and the United States, the court withdraws Part IV of its prior opinion, reported at 730 F.2d 409 (5th Cir.1984), and substitutes for it the following:

## IV.

■ The ICC's contract rate rules were not adopted in this proceeding but in *Ex parte 387, Railroad Transportation Contracts,* 367 I.C.C. 9 (1982). The ICC contends that, insofar as the Railroad Commission's petition is an attack on the validity of the rules themselves, it comes too late and we lack jurisdiction to entertain it. Texas concedes that a direct attack on Ex parte 387 is now barred, but argues that we have jurisdiction to review the rules as they apply to the Burlington contract and to review whether the rules are authorized by the statute.

The Administrative Orders Review Act of 1950, known as the Hobbs Act, provides that a party aggrieved by a rule, regulation, or final order of the ICC must file a petition for judicial review within sixty days. 28 U.S.C. §§ 2342, 2344 (1976 & Supp. V 1981). This limitation is jurisdictional and cannot be judicially altered or expanded.[26]

■ Texas is now barred from attacking the procedure by which the contract rate rules were adopted. *See Natural Resources Defense Council v. Nuclear Regulatory Commission,* 666 F.2d 595 (D.C.Cir. 1981). The crux of the state's challenge, however, is to the ICC's statutory authority to adopt such rules and to the rules as they apply in this case. When an agency applies a previously adopted rule in a par-

ticular case, the Hobbs Act sixty-day limit does not bar later judicial review of the substantive statutory authority for their enactment or of their applicability to a particular situation. *See id.* at 602; *Geller v. FCC,* 610 F.2d 973, 978 (D.C.Cir.1979) (per curiam); *Network Project v. FCC,* 511 F.2d 786, 789 n. 1 (D.C.Cir.1975). As the District of Columbia Circuit observed, in allowing an attack on FCC rules three years after their promulgation:

As applied to rules and regulations, the statutory time limit restricting judicial review of Commission action is applicable only to cut off review directly from the order promulgating a rule. It does not foreclose subsequent examination of a rule where properly brought before this court for review of further Commission action applying it. For unlike ordinary adjudicatory orders, administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.[27]

■ The ICC argues that review of the rule "as applied" must be limited to an examination of whether "the adjudicated facts conform to the rule and whether the rule should be waived or applied in that particular instance." *Pacific Gas & Electric Co. v. FPC,* 506 F.2d 33, 38 (D.C.Cir. 1974). *Pacific Gas,* however, discusses the extent of review of a rule in subsequent *administrative* proceedings. The ICC has cited no case indicating that such a restrictive standard applies to judicial review of an agency rule when later sought to be applied to a particular situation. Indeed, the cases suggest the opposite, especially when the contention is that the rule lacks statutory authorization.[28] Texas is not lim-

---

26. *Illinois Central Gulf R.R. v. ICC,* 720 F.2d 958, 960 (7th Cir.1983); *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 613–14 (5th Cir.1976).

27. *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546 (D.C.Cir.1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959).

28. *See, e.g., Natural Resources Defense Council,* 666 F.2d at 602 (citing *Functional Music, Inc.,* as an example); *cf. Illinois Central Gulf R.R.,* 720 F.2d at 961 (*Functional Music* and *Geller* teach that the statutory time limit on judicial review cannot cut off forever all review of administrative decisions); *Alabama Ass'n of Ins. Agents,* 533 F.2d 224, 236 (5th Cir.1976) (noting, in a

ited to an attempt to demonstrate special circumstances that qualify or alter application of the rule to the Burlington contract.

 The ICC complains understandably about the state's dilatoriness in pursuing this petition for review. Notwithstanding its protestations to the contrary, Texas clearly had notice that the ICC contract rate rules would apply to intrastate as well as interstate commerce before those rules became final. Although the ICC's initial notice of interim contract rules was ambiguous in this regard,[28a] Texas received ample warning that the rules under consideration might be so applied.[29] Despite this warning, Texas failed to participate in the rulemaking proceedings.[30] Texas also failed to seek intervention or file an amicus brief in a Second Circuit case directly reviewing the contract rate rules.[31] It has been suggested that "those who have had the opportunity to challenge general rules should not later be heard to complain of their invalidity on grounds fully known to them at the time of issuance."[32] Nevertheless, the Hobbs Act does not always bar review of a rule on these grounds.[33] We,

therefore, have jurisdiction to consider the Railroad Commission's challenge to the statutory authorization for the rules adopted in *Ex parte 387* and to the application of those rules in this particular case.

This change does not alter the result reached. Therefore, the application for rehearing is denied. Treating the suggestion for rehearing en banc as a petition for panel rehearing, it is ordered that the petition for panel rehearing is DENIED. No member of the panel nor judge in regular active service of this Court having requested that the court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

---

non-Hobbs Act case, that "considerations of finality notwithstanding, our duty to see that the Congressional mandate ... is carried out in individual cases that come before us requires review" of the regulation in question).

**28a.** The ICC's notice of interim contract rules, published on November 5, 1980, certainly did not say that the proposed rules would apply to intrastate movements. *See* 45 Fed.Reg. 73,381 (1980) (to be codified at 49 C.F.R. §§ 1039, 1300).

**29.** The rules became final on November 4, 1982. On February 8, 1982, in its provisional certification of the Texas Railroad Commission, the ICC had informed Texas that its procedures required "excessive disclosure of contract rates." *Ex parte 388, State Intrastate Rail Rate Authority* (Feb. 8, 1982). On August 5, 1982, the ICC had cautioned states that had filed responses to the February 8 decision, including Texas, that they should "pattern their contract rules on those developed thus far by the Interstate Commerce Commission in *Ex parte No. 387*," and warned that, since the *Ex parte 387* proceeding was not then complete, the states would be expected to alter their regulations, if necessary, in order to comply with the final results reached in that proceeding. State Intrastate Rail Rate Authority, 365 I.C.C. 855, 856 (1982). This was suffi-

cient to remedy any defect in the original *Ex parte 387* notice.

**30.** ICC regulations provide that "[a]ny person may participate in rulemaking proceedings by submitting written information or views." 49 C.F.R. § 1110.4 (1983). Even assuming that Texas was misled by the original notice and could not have filed comments by the deadline specified, December 22, 1980, it could have sought to file a late comment during the almost two-year pendency of the rulemaking proceeding. *See id.* § 1110.6.

**31.** *Water Transport Association v. ICC,* 722 F.2d 1025 (2d Cir.1983). *See* 28 U.S.C. §§ 2323, 2348 (1976); Fed.R.App.P. 29.

**32.** *Outward Continental N. Pac. Freight Conference v. Federal Maritime Comm'n,* 385 F.2d 981, 982–83 n. 3 (D.C.Cir.1967).

**33.** The District of Columbia Circuit has allowed a party who had filed objections during a rulemaking proceeding, but who had failed to petition for judicial review of the rulemaking proceeding itself, to attack the substantive validity of the rule when it was applied in subsequent proceedings. *Network Project v. FCC,* 511 F.2d 786 (D.C.Cir.1975).