

# THE ATTORNEY GENERAL
## OF TEXAS

March 3, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Jim Nugent
Chairman
Railroad Commission of Texas
P. O. Drawer 12967
Capitol Station
Austin, Texas 78711

Opinion No. JM-867

Re: Whether the Railroad Commission is prohibited by federal law from exercising its jurisdiction under article 6498, V.T.C.S., to grant railroad discontinuances (RQ-1312)

Dear Mr. Nugent:

You ask whether the Staggers Rail Act of 1980, Public Law 96-448, deprives the Railroad Commission of jurisdiction to consider applications submitted by railroads providing intrastate service in Texas for authority to discontinue "agencies" established under article 6498, V.T.C.S. That statute provides:

> Each railroad company in this State shall provide and maintain adequate, comfortable and clean depots and depot buildings at their several stations for the accommodation of passengers, and keep said depot buildings well lighted and warmed for the comfort and accommodation of the traveling public. They shall keep and maintain apartments in such depot buildings for the use of passengers, and keep and maintain adequate and suitable freight depots and buildings for receiving, handling, storing and delivering of all freight handled by such roads, and the Commission shall require railroad companies to comply fully with the provisions of this law under such regulations as said Commission may deem reasonable.

V.T.C.S. art. 6498 (formerly V.T.C.S. art. 6693). We conclude that the Railroad Commission has, at present, no authority to consider applications for the discontinuance of agencies.

Until 1980, state regulatory authorities, such as the Texas Railroad Commission, had at least initial jurisdiction to regulate <u>intrastate</u> aspects of rail transportation furnished by interstate carriers. Of course, the federal government possesses the power to preempt state regulation of <u>intra</u>state commerce to protect the free flow of <u>inter</u>state commerce. <u>See</u> <u>Houston and Texas Railway v. United States</u>, 234 U.S. 342 (1914) (the <u>Shreveport Rate Cases</u>). In the Staggers Rail Act of 1980, Pub. L. No. 96-448, 94 Stat. 1895 (codified in scattered sections of titles 11, 45, and 49 of the United States Code), Congress adopted a new national rail transportation policy designed both to reduce government regulation of railway companies and to allow the industry to earn "adequate revenues." <u>See generally</u> Staggers Rail Act of 1980, Pub. L. No. 96-448, 1980 U.S. Code Cong. & Admin. News (94 Stat.) 3978; 49 U.S.C. §10101a(3).

Congress directed the Interstate Commerce Commission both to "cooperate with the States on transportation matters" and to "assure that intrastate regulatory jurisdiction is exercised in accordance with the standards established" in the Staggers Act. 49 U.S.C. §10101a(9). The Staggers Act provides for the possible preemption of state jurisdiction in three different, but interrelated, ways:

(1) It preempts all state jurisdiction over certain general intrastate rate increases;

(2) It prohibits a state from exercising any jurisdiction over <u>intra</u>state rail transportation <u>provided by an interstate carrier</u> unless the state "exercises such jurisdiction exclusively in accordance with the provisions of" the Staggers Act; and

(3) It preempts <u>all</u> state regulation of any aspect of intrastate rail transportation provided by an interstate carrier unless the federal government certifies that state regulatory standards and procedures are in accord with the Staggers Act.

<u>See</u> 49 U.S.C. §11501(b)(1), (b)(3)(A), (b)(4)(A), and (b)(6).

The last provision is the most important in considering the Railroad Commission's authority to grant agency discontinuances. In particular, the Staggers Rail Act requires the Interstate Commerce Commission to affirmatively certify that a state regulatory program for intrastate rail transportation provided by an interstate carrier is in compliance with the Act. In relevant part, the Staggers Act provides:

> Any State authority which is certified by the Commission . . . may use its standards and procedures in exercising jurisdiction over intrastate rail rates, classifications, rules, and practices during the 5-year period commencing on the date of such certification. <u>Any State authority which is denied certification . . . may not exercise any jurisdiction over intrastate rates, classifications, rules, and practices until it receives certification</u>. . . . (Emphasis added.)

49 U.S.C. §11501(b)(4)(A). We note that "rules and practices" of rail carriers are defined, in part, to mean

> rules and practices on matters related to . . . transportation or service, including rules and practices on . . . (D) facilities for transportation.

49 U.S.C. §10702(a)(2). Additionally, a "railroad" is defined in the Interstate Commerce Act to include:

> a freight depot, yard, and ground, used or necessary for transportation.

49 U.S.C. §10102(21)(C). Finally, the Act defines "transportation" to include

> (A) . . . property, facilit[ies], instrumentalit[ies],or equipment of any kind related to the movement of passengers or property . . .; and

(B) services related to that movement. . . .

49 U.S.C. §10102(26).[1]

Thus, in order for the Railroad Commission to be able to exercise the authority to grant agency or depot discontinuances, under article 6498, V.T.C.S., the State must be certified by the Interstate Commerce Commission to regulate intrastate rail transportation provided by interstate carriers. Texas has failed to earn that certification. Ex Parte No. 388 (Sub-No. 31): State Intrastate Rail Rate Authority - Texas (served April 20, 1984), aff'd sub nom. Railroad Commission of Texas v. United States, 765 F.2d 221 (D.C. Cir. 1985). See also State of Texas v. United States, 730 F.2d 409 (5th Cir. 1984), modified on rehearing, 749 F.2d 1144 (5th Cir.), cert. denied, 472 U.S. 1032 (1985); State of Texas v. United States, 730 F.2d 420 (5th Cir. 1984). Additionally, an attack by Texas on the constitutionality of the provisions of the Staggers Act preempting regulation by noncertified states failed. State of Texas v. United States, 730 F.2d 339 (5th Cir.), cert. denied, 469 U.S. 893 (1984); see also Illinois Commerce Commission v. Interstate Commerce Commission, 749 F.2d 875, 885-87 (D.C. Cir. 1984), cert. denied, 474 U.S. 820 (1985).

In the decision in Railroad Commission of Texas, supra, the Court of Appeals for the District of Columbia Circuit noted that Texas had failed to obtain the certification required under the Staggers Rail Act to enable it to regulate intrastate rail transportation provided by interstate carriers, thus leaving "the Texas regulatory apparatus out in the cold." 765 F.2d at 226. We find no basis to question either the findings of the Interstate Commerce Commission or the several appellate courts which have rejected the Railroad Commission's several attempts to avoid the preemption of its authority to regulate intrastate rail transportation provided by interstate carriers. Until the federal government grants the Texas Railroad Commission the necessary authority to regulate intrastate rail transportation provided by interstate carriers, the Railroad Commission is without

---

1. The Railroad Commission retains authority to regulate the safety of railways in Texas, as permitted by the Rail Safety Act of 1970, 45 U.S.C. §421 et seq.

jurisdiction to act on agency discontinuances, or any other matter preempted by the federal government.

## S U M M A R Y

The Texas Railroad Commission's authority to regulate agency discontinuances, <u>see</u> article 6498, V.T.C.S., has been preempted by the federal government, insofar as the agencies are maintained by interstate carriers providing intrastate services.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General