**WIND RIVER MINING CORPORATION, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America; Manuel Lujan, Jr.; Delos Jacobson, Director of the Bureau of Land Management, Defendants–Appellees.**

No. 90–55731.

United States Court of Appeals, Ninth Circuit.

Submitted June 4, 1991.[*]

Decided Oct. 8, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must determine the applicable statute of limitations, if any, for challenges to federal land classification decisions.

I

On March 30, 1979, the Bureau of Land Management ("BLM") published in the Federal Register its decision establishing 138 Wilderness Study Areas ("WSAs") on federal land located in California. These classifications were mandated by the Federal Land Policy and Management Act of 1976 ("FLPMA"). WSAs are "roadless areas of five thousand acres or more and roadless islands of the public lands" having certain wilderness characteristics. 43 U.S.C. § 1782(a) (1988) (FLPMA § 603(a)).

Wind River Mining Corporation staked certain mining claims within one of those regions, "WSA 243," over a several-month period stretching from 1982 to September 6, 1983. After Wind River failed to file a 1983 notice of intention to hold the claims, as required by 43 U.S.C. § 1744 (1988) (FLPMA § 314), the BLM informed Wind River that the claims were declared abandoned. *See United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (requiring strict adherence to recordation requirements of FLPMA § 314). Wind River promptly relocated and refiled its claims in 1985.

Because Wind River's claims are located within a WSA, Wind River is barred from pursuing ore-extraction activities on the land. *See* 16 U.S.C. § 1133 (1988) (restrictions on use of wilderness land). Wind River contends that the land on which its claims lie should never have been classified as a WSA, because it is not and was not "roadless" as is required by FLPMA § 603(a). In 1986 and 1987, Wind River attempted to have the BLM declare its decision creating WSA 243 invalid. After these efforts were rebuffed, Wind River appealed to the Interior Board of Land Appeals ("IBLA"), which dismissed the appeal as untimely on May 7, 1987.

Wind River filed a plan of operation with the BLM in 1987, which (if approved) would enable Wind River to pursue exploration and development of its claims. The BLM denied the application. Wind River appealed to the IBLA, which was still considering the appeal as of September 1989.

On September 22, 1989, Wind River filed a complaint for review in federal district court from the IBLA's 1987 refusal to declare invalid the BLM's creation of WSA 243. Wind River sought a decree declaring WSA 243 null and void *ab initio* and ordering the agency to restore the property to its former multiple-purpose use. Wind River urged that the agency's 1979 administrative decision was *ultra vires* and an unconstitutional taking.

On March 21, 1990, the district court filed an order and opinion granting the government's motion to dismiss. The court concluded that Wind River's action was barred by its failure to exhaust administrative remedies and by the six-year statute of limitations on civil actions against the United States set forth in 28 U.S.C. § 2401(a). However, the court erroneously stated that Wind River had staked its claims by the time of the agency's 1979 WSA decision.

■ On May 10, 1990, the court issued an order denying Wind River's motion to vacate the prior order and to reconsider its decision. The court did correct the factual error in the new order, however. In so doing, the court apparently abandoned the exhaustion rationale for denying relief, instead reiterating its ruling on the statute of limitations.[1]

■ Wind River appeals both orders. Whether Wind River's challenge is barred by a statute of limitations is a question of law, subject to plenary review. *See Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988).

II

■ Although FLPMA authorizes judicial review of land-management decisions, *see* 43 U.S.C. § 1701(a)(6) (FLPMA § 102(a)(6)), the act contains no statute of limitations governing such suits. The first question presented is whether the general six-year statute of limitations for civil actions brought against the United States, *see* 28 U.S.C. § 2401(a), applies to actions for judicial review brought pursuant to the Administrative Procedure Act ("APA"), *see* 5 U.S.C. §§ 701–706.

Section 2401(a) declares that a six-year statute of limitations applies to "every civil action commenced against the United States," with an exception not relevant here. While an administrative proceeding is not a "civil action" within the meaning of section 2401(a), *see, e.g., Anderson v. Atomic Energy Comm'n,* 313 F.2d 313, 316 (7th Cir.1963); *Southern Cal. First Nat'l Bank v. United States,* 298 F.Supp. 1249, 1252 (S.D.Cal.1969), a complaint filed in federal district court seeking *review* of an administrative decision is another matter, *see N.V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n,* 316 F.2d 401, 405–06 (D.C.Cir.1963) (distinguishing, for the purposes of section 2401(a), claims filed with the Patent Compensation Board from actions filed in federal court which challenge the Board's decision).

We have previously held that an action commenced by filing a complaint for review of agency action is a "civil action" within the meaning of section 2401(a). In *Penfold,* we applied section 2401(a) to bar the Sierra Club's APA challenge to BLM regulations whose adoption purportedly did not comply with the procedural requirements of the National Environmental Policy Act. We stated:

> Previously, we have suggested, without holding, that § 2401(a) applies to the APA. *Lee v. United States,* 809 F.2d

1. *See* Order Denying Plaintiff's Motion for Reconsideration at 2–3, *Wind River Mining Corp. v. United States,* No. CV–89–5639–JMI (Gx) (May 10, 1990) (Ideman, J.) (¶ 6) (after noting correction, continuing: "In the instant action, however, Plaintiff's action is still barred by the six year statute of limitations."). Wind River has satisfied the exhaustion requirements of 43 C.F.R. § 4.21(b) by petitioning the BLM and appealing its decision to the IBLA. *Doria Mining & Engineering Corp. v. Morton,* 608 F.2d 1255, 1257 (9th Cir.1979), *cert. denied* 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 237 (1980).

1406, 1409 n. 2 (9th Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). We believe this suggestion to be correct.... By its terms, section 2401(a) applies to "every civil action commenced against the United States." As a general statute of limitation, it should apply to actions brought under the APA which challenge a regulation on the basis of procedural irregularity.

857 F.2d at 1315. In *Shiny Rock Mining Corporation v. United States,* 906 F.2d 1362 (9th Cir.1990), this court relied upon *Penfold* to reach the same conclusion with respect to a procedural challenge to a public land order withdrawing land from appropriation under mining laws. *Id.* at 1364.

Nonetheless, Wind River cites two earlier decisions of this court that arguably are inconsistent with the *Penfold–Shiny Rock* rule. In *Coleman v. United States,* 363 F.2d 190 (9th Cir.1966), a government action for ejectment, this court was faced with a counterclaim seeking judicial review of an Interior Department decision invalidating mining claims. In rejecting the government's argument that the counterclaim should be treated as an impermissible collateral attack on the agency decision, the court observed: "There is no statutory time limit for an aggrieved person to seek judicial review of agency action in the Department of the Interior under 5 U.S.C. § 1009." *Id.* at 196 (footnote omitted). Read literally, this statement is not inconsistent with *Penfold–Shiny Rock;* the six-year statute of limitations is *not* found at 5 U.S.C. § 1009 or elsewhere in the APA, *see* 363 F.2d at 196 n. 5. The *Coleman* counterclaim in fact was brought well within six years of the adverse agency decision. In any event, *Coleman* was subsequently reversed by the Supreme Court on the merits. *See United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968) (examining the definition of the statutory term "valuable mineral deposit"). We do not read our overruled decision in *Coleman,* despite its qualified suggestion that no statute of limitations applied, to foreclose recognition of section 2401(a) as the applicable statute of limitations for APA actions.

Somewhat more troubling is *United States v. Webb,* 655 F.2d 977 (9th Cir.1981), in which a mining claimant attempted to raise a challenge to a nine-year-old administrative decision against the claimant as a defense in a government ejectment action. In a short opinion, the court stated:

There is no statute of limitations for judicial review of an administrative decision by the BLA. Thus, a BLA decision is ordinarily reviewable in a subsequent action for ejectment regardless of how much time has elapsed. *See Coleman v. United States,* 363 F.2d 190 (9th Cir. 1966), *rev'd on other grounds,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). The broad rule that judicial review of BLA decisions is available without regard to passage of time is subject, however, to the rules of pleading which the Federal Rules of Civil Procedure impose upon all parties, and to the general principles of estoppel.

*Id.* at 979. While this case is more helpful to Wind River than *Coleman,* because it involves a claim which seemingly would be barred by section 2401(a) and because it is not self-limiting by specific reference to 5 U.S.C. § 1009, *Webb* still suffers as authority from not having considered section 2401(a) at all and from its reliance upon *Coleman.* Only in the more recent *Penfold* and *Shiny Rock* cases was the precise question of section 2401(a)'s applicability to APA actions presented, and we will therefore follow them.

■ *Penfold* and *Shiny Rock* mandate our conclusion that section 2401(a) applies to actions brought under the APA. As we observed in *Penfold,* a suit for review of an agency decision, commenced by filing a civil complaint in federal court, fits the explicit terms of section 2401(a).

### III

■ Concluding that the general statute of limitations for actions against the government applies to APA actions does not end our inquiry. The statute requires that the judicial complaint be filed "within

six years after the right of action first accrues." 28 U.S.C. § 2401(a). The more difficult question posed in this case is when Wind River's right of action first accrued.

Several possible events could be used for measuring the date on which Wind River's right of action first accrued. If the announcement of the BLM's decision in the Federal Register in 1979 is chosen, then Wind River's 1989 filing of the complaint was too late. Similarly, if the dates on which Wind River located its claims (ranging from 1982 to September 6, 1983) are used, then Wind River's September 22, 1989 filing was still untimely. If, however, Wind River's cause of action did not arise until Wind River relocated its claims in 1985, or when the IBLA affirmed the BLM's denial of Wind River's challenges to the designation of WSA 243 in 1987, then the statutory limit had not expired by the time Wind River filed this action.

In *Shiny Rock*, a public land order promulgated in 1964 (and amended a year later) withdrew certain lands from appropriation under mining laws. In 1979, Shiny Rock Mining Corporation located a mining claim within the designated region and shortly thereafter applied to the BLM for a mineral patent. In 1983, the BLM denied the application on strength of the 1964 and 1965 orders, and Shiny Rock filed a complaint for declaratory judgment in federal court.

Shiny Rock contended that its right of action, for purposes of section 2401(a), did not accrue until the 1983 denial of its application. We disagreed, holding that the statutory period commenced with publication of the land withdrawal orders in 1964 and 1965. We noted that "[p]ublication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." 906 F.2d at 1364 (quotation omitted).[2] We were con-

cerned that a contrary view would essentially nullify the statute of limitations by permitting renewed challenges with every denial of an application, long after six years had passed. *Id.* at 1365.

■ *Shiny Rock* dealt with a procedural challenge to the agency's action. *See id.* at 1364; *see also Shiny Rock Mining Corp. v. United States*, 825 F.2d 216, 218–19 (9th Cir.1987) (related proceeding). Similarly, *Penfold*, the authority for *Shiny Rock's* holding, explicitly limited its conclusion to challenges of a regulation "on the basis of procedural irregularity." *Penfold*, 857 F.2d at 1315; *see also Shiny Rock*, 906 F.2d at 1364 (quoting this portion of *Penfold*). Here, however, Wind River asserts that the BLM's designation of WSA 243 was *ultra vires* as exceeding the agency's statutory authority. We think that different considerations guide the application of the statute of limitations to such challenges, although we remain sensitive to the government's interest in the finality of its policy decisions.

Other circuits have concluded that an agency regulation or other action of continuing application may be challenged after a limitations period has expired if the ground for challenge is that the issuing agency acted in excess of its statutory authority. *See Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C.Cir.) (substantive challenge may come after limitations period by filing petition to rescind regulations and appealing the denial of the petition), *cert. denied,* —— U.S. ——, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990); *Commonwealth Edison Co. v. United States Nuclear Regulatory Comm'n*, 830 F.2d 610, 613–16 (7th Cir.1987) (limitations period cutting off pre-enforcement review of regulation does not prevent court from reviewing substance of regulation when ap-

---

**2.** Under a more lenient view of what constitutes an "interested" or "affected" person, the *Shiny Rock* Court might not have found an accrued right of action until 1979, when Shiny Rock actually obtained an interest in the land. However, in this context we took a very broad view of "interested" party, declaring: "The only injury required for the statutory period to commence was that incurred by all persons when,

in 1964 and 1965, the amount of land available for mining claims was decreased." *Id.* at 1365–66 (citation omitted). Frankly, our strict view may not be in step with that of other circuits. *See, e.g., Illinois Cent. Gulf R.R. Co. v. ICC,* 720 F.2d 958, 961 (7th Cir.1983) (ignoring statutory limit on judicial review where "no one had any reason to challenge the decision at the time it was made").

plied); *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546–47 (D.C.Cir.1958) (with administrative rules of continuing application, rather than one-time adjudicative orders, "limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity"), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959); *accord Texas v. United States,* 749 F.2d 1144, 1146–47 (5th Cir.), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985).

In *Oppenheim v. Coleman,* 571 F.2d 660 (D.C.Cir.1978), the court permitted an indirect challenge to a 1946 Civil Service Commission decision brought thirty years later. The commission's 1946 decision had adversely affected Oppenheim's retirement benefits. Oppenheim did not challenge the decision at the time, but in 1974, when he retired, he filed a claim for more benefits and then a suit to overturn the commission's denial of his claim. The District of Columbia Circuit carefully noted that section 2401(a) barred any direct challenge to the commission's 1946 action. *See id.* at 662. Nonetheless, the court ruled that Oppenheim was not barred from bringing an APA challenge to the commission's current denial of benefits, because Oppenheim's action "seeks to set aside recent arbitrary agency action" (to the extent the 1946 decision was substantively wrong and reliance upon it would be arbitrary) rather than to recover damages from the government for its 1946 decision. *See id.* at 663. The court had in effect permitted a substantive challenge to the earlier decision because it was brought in the context of an adverse application of that decision.

■ The District of Columbia Circuit's approach, in our view, strikes the correct balance between the government's interest in finality and a challenger's interest in contesting an agency's alleged overreaching. If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision. Similarly, if the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years of the decision. This result, even if not dictated by *Penfold* and *Shiny Rock,* would make the most sense. The grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision; one does not need to have a preexisting mining claim in an affected territory in order to assess the wisdom of a governmental policy decision or to discover procedural errors in the adoption of a policy. The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure.

■ If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger. Such challenges, by their nature, will often require a more "interested" person than generally will be found in the public at large. For example, assuming that Wind River's challenge to the designation of WSA 243 is merited, no one was likely to have discovered that the BLM's 1979 designation of this particular WSA was beyond the agency's authority until someone actually took an interest in that particular piece of property, which only happened when Wind River staked its mining claims. The government should not be permitted to avoid all challenges to its actions, even if *ultra vires,* simply because the agency took the action long before anyone discovered the true state of affairs.[3]

---

**3.** We recognize that in *Shiny Rock* as well the objection to the agency's 1964 land withdrawal decision did not turn up until after Shiny Rock staked a claim more than fifteen years later. The significant difference, however, is that Shiny Rock's objection was to the agency's non-compliance with procedural requirements for the adoption. Since the agency action was not *ultra vires,* the strong interest in finality justified our reading of section 2401(a) to cut off late challenges to the action.

We do not believe that our holding will "render the limitation on challenges to agency, orders we adopted in *Penfold* meaningless," *Shiny Rock*, 906 F.2d at 1365. Within the narrow scope of challenges to agency decisions that we permit, there are still impediments to repeated attacks upon an agency action. The challenge must be brought within six years of the agency's application of the disputed decision to the challenger. As in this case, principles of res judicata will likely bar further challenges to the agency decision once the claimant's first challenge is resolved. *Cf. Public Citizen*, 901 F.2d at 153 n. 3.

We hold that a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger. In Wind River's case, its September 1989 filing of a complaint for review was easily within the six-year period. The right to bring a civil suit challenging an agency action accrues "upon the completion of the administrative proceedings." *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967); *see also N.V. Philips' Gloeilampenfabrieken*, 316 F.2d at 406 ("under § 2401(a), ... when, as here, the claimant must first present his claim to an executive tribunal, the right of action does not accrue until the executive tribunal has acted on the claim"). The BLM finally rejected Wind River's attempts to have WSA 243 declared invalid in 1987. Although Wind River has instituted another line of attack (attempting to have the BLM approve its plan of operation for mining activities), for our purposes the agency's final decision was the IBLA's May 7, 1987 rejection of Wind River's appeal. Wind River's complaint for review was filed less than twenty-nine months later, and therefore was timely.

## IV

The dual orders of the district court dismissing Wind River's complaint as barred by the applicable statute of limitations are reversed. The case is remanded to the district court for further proceedings.

REVERSED and REMANDED.

D.W. NELSON, Circuit Judge, dissenting:

I agree with the majority that the six-year federal statute of limitations applies to suits challenging agency action. I further agree that the *Penfold–Shiny Rock* rule should not apply to claims for which an agency was wholly without statutory authority to promulgate a regulation. Because I do not think Wind River's claim can be so characterized, I dissent.

The Bureau of Land Management (BLM) created the wilderness areas in question pursuant to the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1782(a). That statute authorized BLM to designate as wilderness areas "roadless areas of five thousand acres or more." Wind River challenges the designation of the area in question as a wilderness area because it claims that the area was not "roadless." While it is true that something called the Kelso Road bisects the wilderness area, the BLM classified Kelso as a deteriorated "way" and not a "road."

Wind River contests this determination, claiming that it is inconsistent with the BLM Manual. Even if this claim is accepted at face value, it does not demonstrate *an absence of statutory authority* vested in BLM. Instead, it merely shows that BLM's exercise of its authority was ill-considered or, at worst, arbitrary and capricious.[1] The *authority* to determine which areas are roadless clearly belongs to BLM, and Wind River merely challenges how that authority has been exercised. *See Students of the California School for the Blind v. Honig*, 736 F.2d 538, 546 (9th Cir.1984) (agency charged with defining statutory language does not exceed statutory authority unless definition is not even reasonably related to statute), *vacated as*

---

1. The interpretation of the agency charged with administering a statute is given great deference.

*See Brock v. Bechtel Power Corp.*, 803 F.2d 999, 1000 (9th Cir.1986).

*moot* 471 U.S. 148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985). Here, Wind River does not even challenge the way BLM has defined "roadless," but merely the way it has applied its definition. This is very different from an *ultra vires* challenge.[2]

The fact that Wind River chose to describe BLM's actions as *"ultra vires"* in its complaint does not change this analysis. While it is true that courts must take plaintiff's allegations as true in resolving motions to dismiss, that rule applies only to *factual* allegations. *See Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987) ("the court must presume all *factual* allegations of the complaint to be true") (emphasis added). By contrast, the question at issue here—what act triggers commencement of the statute of limitations—is a question of law. *Englerius v. Veteran's Administration*, 837 F.2d 895, 896–97 (9th Cir.1988). So too is the definition of an *ultra vires* act.

I do not think we can allow a plaintiff's unsupported legal characterization to preclude disposal of cases on a motion to dismiss. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981) ("We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Just as an allegation in a plaintiff's complaint that she was denied "due process of law" is not conclusive, so Wind River's allegation that BLM's actions were *"ultra vires"* is not conclusive.

In *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990), this Court noted that a case should be dismissed on statute of limitations grounds only if the determination could be made as a matter of law without resolving genuine factual issues.

That is the case here. Whatever they choose to call it, Wind River simply does not state an *ultra vires* claim. Dismissal is therefore appropriate. I would affirm.

---

2. A good example of this difference can be found within § 1782(a) itself. WSAs must be "roadless areas of 5,000 acres or more." Had BLM chosen to ignore its statutory mandate and declare areas of less than 5,000 acres to be WSAs, that action would have been *ultra vires* because directly contrary to the rule of the statute. *Sierra Club v. Watt*, 608 F.Supp. 305, 341 (E.D.Cal.1985) (so holding). Similarly, had BLM attempted to apply the statute to areas which it knew contained roads, its actions would be *ultra vires*.

Here, however, BLM merely exercised its authority to define and interpret the word "roadless." It concluded that the "Kelso Road" was in fact a deteriorated way, rather than a road. Wind River may claim that that determination was wrong, but not that BLM had no authority to make that determination.