Rocky CONNER, Ray Conner, Frances S. Conner, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Defendants.

No. CV–N–97–00589DWHPHA.

United States District Court, D. Nevada.

Sept. 22, 1999.

Rocky Conner, Carson City, NV, pro se.

Ray Conner, Carson City, NV, pro se.

Frances S. Conner, Carson City, NV, pro se.

Kathryn E. Landreth, United States Attorney, Shirley Smith, Assistant United States Attorney, Reno, NV, for defendant.

### ORDER

HAGEN, District Judge.

Before the court is defendant United States's Motion for Summary Judgment (# 20, 23, 28).[1] Plaintiff has opposed (# 27) and defendant has replied (# 29). Plaintiff has also filed its own Motion for

Summary, Judgment (# 21, 22). Defendant United States has opposed (# 25) and plaintiff has not replied. For the reasons stated below, the court grants defendant's motion and denies plaintiff's motion.

### *Motion for Summary Judgment*

#### A. *Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, *Zoslaw v. MCA Distr. Corp.*, 693 F.2d 870, 883 (9th Cir.), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983), and for this purpose, the material lodged by the moving party must be viewed in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Baker v. Centennial Ins. Co.*, 970 F.2d 660, 662 (9th Cir.1992). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence

---

1. Defendant's motion applies to both its Counterclaim and plaintiffs' Complaint.

will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Products v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270, 282 (9th Cir.1979).

The court finds this case appropriate for summary judgment. First, plaintiffs' Complaint raises issues that are time-barred. The court recognizes allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by lawyers, see *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163, (1980); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), yet, mere *pro se* status does not cure statute of limitations problems. Second, focusing on defendants' Counterclaims, there is no dispute plaintiffs are occupying the land at issue or that plaintiffs have no authority from the Bureau of Land Management ("BLM") to occupy that land. Plaintiffs' only dispute is whether the United States owns the land or whether BLM has authority to manage the land. These are legal questions which are wellsettled in Nevada. Thus, summary judgment is appropriate. For the reasons set forth below, the court grants defendant's motion and denies plaintiffs' motion.

### B. *Analysis*

#### 1. *Introduction*

Defendant United States owns certain land near Carson City, Nevada, including a forty acre parcel described as the Southwest quarter of the Southeast quarter of Section 14, Township 15 North, Range 20 East, Mount Diablo Meridian ("the site"). *See* United States's Motion (# 20), Ex. A (Mineral Report—Surface–Use/ Validity Examination, Orestimba # 1 Placer Mining Claim pp 5–7) (dated December 20, 1991); *see also* Ex. B (Declaration of Daniel Jacquet), ¶ 7. On November 22, 1967, plaintiff Ray Conner and another individual located the Orestimba # 1 Placer Mining Claim on the above described land. *Id.,* Ex. A at 6. In January 1988, plaintiff Rocky Conner placed a mobile home on the unpatented placer mining claim and proceeded to make the claim his primary residence. *Id.,* Ex. A at 4. However, on July 28, 1997, the Interior Board of Land Appeals ("IBLA") affirmed a BLM decision declaring the unpatented mining claim occupied by Rocky Conner null and void for failure to discover a valuable mineral deposit. *Id.,* Ex. C (*United States v. Rocky Conner, et al.,* 139 IBLA 361 (1997)). In the same Order, the IBLA also affirmed a BLM decision finding the plaintiffs in trespass and ordering them to cease occupancy of the site, remove their property from the site, and reclaim the site. *Id.,* Ex. C (139 IBLA at 366). Nevertheless, plaintiffs still continue to occupy the site in question. *Id.,* Ex. B (Declaration of Daniel Jacquet), ¶ 4.

#### 2. *Defendant United States's Motion for Summary Judgment*

##### a. *Plaintiffs' Complaint*

###### i) *Statute of Limitations*

Defendant argues plaintiffs' Complaint does not appear to challenge the 1997 IBLA decision, but instead appears to

challenge a 1991 IBLA decision concerning certain millsite claims which two of the plaintiffs located in 1988 over the placer mining claim. *Id.,* Ex. D (IBLA Order dated September 26, 1991). The 1991 IBLA decision affirmed a BLM decision declaring these millsite claims null and void *ab initio,* because they were located on land which had been segregated from mineral entry in 1970. Defendant points out plaintiffs appear not only to challenge the 1991 decision, but also the 1970 segregation upon which the 1991 decision was based. Defendant argues, however, both of these claims are timebarred by the applicable statute of limitations. Defendant therefore contends summary judgment is appropriate in its favor.

■ The court agrees with defendant's position. In their Complaint, plaintiffs appear to be challenging both the 1970 segregation and the 1991 IBLA decision which affirmed BLM's decision to declare the Orestimba Nos. 1–6 millsite claims null and void *ab initio.* Both claims, however, are timebarred by the applicable statute of limitations. The applicable statute of limitations is found at 28 U.S.C. § 2401(a), which provides in part:

> Except as provided in the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

Although the Administrative Procedure Act ("APA") provides for judicial review of final agency action, 5 U.S.C. § 704, such as the 1991 IBLA decision, the Ninth Circuit has held the provisions of 28 U.S.C. § 2401(a) apply to actions brought under the APA. See *Wind River Mining Corp. v. United States,* 946 F.2d 710, 713 (9th Cir. 1991).

■ With respect to the 1991 IBLA decision, plaintiffs' right to obtain judicial review first accrued when the IBLA issued its Order on September 26, 1991. This Order was the final decision of the Department. 43 C.F.R. §§ 4.403; 4.22(D); see *Wind River,* 946 F.2d at 716 ("The right to bring a civil suit challenging an agency action accrues 'upon completion of the administrative proceedings.' ") (quoting *Crown Coat Front Co. v. United States,* 386 U.S. 503, 511, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967)). Plaintiffs' Complaint, however, was filed on October 16, 1997, approximately twenty days after the statute of limitations period expired. Therefore, the court finds plaintiffs' challenge to the 1991 IBLA Order is dismissed as timebarred.

■ With respect to plaintiffs' second challenge, the 1970 segregation, the date upon which the right of action accrued depends on the nature of the challenge. See *Wind River,* 946 F.2d. at 715. If plaintiffs' challenge merely raises a procedural violation with regard to agency action, then the challenge must be brought within six years of the action. *Id.* If, on the other hand, plaintiffs' challenge raises the question of whether the action exceeded the agency's constitutional or statutory authority, then the challenge may be brought more than six years after agency action. *Id.* In the latter situation, the challenge to the initial action accrues when an agency issues a decision applying the initial action to the challenged party. *Id.*

■ In the instant case, although plaintiffs couch their challenge to the 1970 segregation in terms of fraud, the challenge essentially alleges a procedural violation in the decision to proceed with the segregation. *See* Complaint (# 1), ¶ 15. Plaintiffs argue the applicable regulations required certain notifications and publications, yet BLM failed to comply with these regulations. Given this procedural challenge, the court finds plaintiffs were required to bring their action within six years of the 1970 segregation (December 16, 1970).[2]

---

2. Even if the court were to determine plaintiffs were arguing the 1970 segregation was outside of BLM's authority, the statute of limitations problem would still exist, because the Complaint was filed more than six years after the segregation was applied to the plaintiffs (i.e. the 1991 IBLA millsite decision).

Since plaintiffs' Complaint was filed on October 16, 1997, they missed the applicable statute of limitations period by over 20 years. Therefore, the court finds plaintiffs' challenge to the 1970 segregation is also dismissed as timebarred.

In sum, to the extent plaintiffs' Complaint can be read as challenges under the Administrative Procedure Act to the 1970 Segregation or the 1991 IBLA decision concerning the millsites, these claims are timebarred.

#### ii) *Sovereign Immunity*

■ As discussed above, plaintiffs' Complaint, when read liberally, can probably best be described as a challenge under the Administrative Procedure Act to the 1970 segregation and 1991 IBLA Order. Plaintiffs, however, do characterize their Complaint as being one for "Act of Fraud Committed by Bureau of Land Management, United States Department of Interior," as well as one for "Deprivation for Pre–Existing Rights." Consequently, the court also finds to the extent plaintiffs raise claims other than APA challenges, the United States has not waived its sovereign immunity to these claims. The terms upon which the United States consents to be sued defines the court's jurisdiction to hear such a suit. See *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); 28 U.S.C. § 2675(a). In the instant case, plaintiffs have not identified any statute which constitutes a waiver of sovereign immunity by the United States. See *McMillan v. Dept. of Interior,* 907 F.Supp. 322, 326 (D.Nev.1995). Therefore, in the absence of such a waiver, this courts lacks jurisdiction to hear such claims and they are dismissed.

#### b. *Defendant United States's Counterclaims*

Defendant also moves for summary judgment on its Counterclaims. Defendant argues there is no dispute plaintiffs continue to occupy the land at issue without proper government authorization. Moreover, defendant claims despite having had ample opportunity to remove themselves from the land, plaintiffs remain in trespass, in direct defiance of the federal government's authority to manage the land and in derogation of the public's right to use the land. Defendant therefore argues summary judgment is appropriate and it is entitled to its requested relief.

#### i) *Plaintiffs are Occupying the Public Lands Without Authority*

The United States holds public lands in trust and has the right and obligation to protect those lands from trespass. See *United States v. Beebe,* 127 U.S. 338, 342, 8 S.Ct. 1083, 32 L.Ed. 121 (1888). It is well settled that one who enters public lands of the United States without right is a trespasser, and like any other landholder, the United States is entitled to protect its property against such trespassers. See *Utah Power and Light Co. v. United States,* 243 U.S. 389, 404, 37 S.Ct. 387, 61 L.Ed. 791 (1916).

In 1976, Congress enacted the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1701, *et seq.,* which gives guidance to the BLM on how public lands are to be managed. Pursuant to this statute, the United States (on behalf of BLM) may seek a federal court order to prevent or abate the unauthorized use of the public lands in violation of FLPMA regulations. 43 U.S.C. § 1733(b).

Unauthorized use of the public lands is considered to be a trespass. 43 C.F.R. § 2920.1–2(a)(1–3). Trespassers are liable to the United States for administrative costs, the fair market rental value of the land, and reclamation costs. 43 C.F.R. § 2920.1–2(a)(1– 3). If the trespass is determined to be willful, the trespasser may also be assessed three times the fair market rental value. 43 C.F.R. § 2920.1–2(b).

The court finds plaintiffs are occupying the public land at issue without proper government authorization. Plaintiffs have lacked such authorization since the Orestimba # 1 Placer Mining Claim was declared null and void. This decision, by

Administrative Law Judge Harvey Sweitzer, took effect on April 19, 1996, the date the IBLA denied plaintiffs' Petition for a Stay in that proceeding.[3] 43 C.F.R. § 4.21(a)(3). Therefore, the court finds plaintiffs have been trespassing on public lands since that April date.

Moreover, the court finds there can there be no doubt this trespass is willful. On July 28, 1997, the IBLA affirmed the BLM's trespass decision, finding "a claimant's private appropriation of land embracing an invalid claim is in derogation of the rights of the public...." *See* Defendant's Motion (# 20), Ex. C (139 IBLA at 366 (citations omitted)). Plaintiffs were given notice of this decision, yet nevertheless have remained on federal land in open defiance of Departmental authority to manage that land.[4]

### ii) *Injunctive Relief*

■ The court finds the United States is entitled to injunctive relief to stop plaintiffs' continuing trespass. The United States has demonstrated the necessary basis for the injunctive relief requested.[5] *See* United States's Motion (# 20) at 18–20. Essentially, the United States requests plaintiffs be ordered to cease their illegal occupancy of public lands and to return the land as much as possible to its natural state as it existed before the occupancy began. The court also agrees with defendant's position that damages alone cannot remedy this continuing intrusion on the United States's property and BLM's congressional mandate to manage the public lands.

### iii) *Damages*

As stated above, one who wilfully trespasses on public lands is liable to the United States for the fair market rental value of the property, as well as administrative costs incurred by the United States as a result of the trespass. See 43 C.F.R. § 2920.1–2(a). Defendants have conducted an appraisal of the land at issue and submitted a fair market rental value for plaintiffs unlawful use. Defendants also have submitted their proposed administrative costs associated with the trespass. However, both calculations are figured as of December 31, 1998. In light of the fact it is now September, 1999, the court orders defendant re-submit its calculated fair market rental value and administrative costs so the court can make a proper ruling.

Defendant also contends BLM is entitled to collect a penalty in an amount equal to three times the fair market rental value for the property, due to the fact the trespass has been knowing and willful. 43 C.F.R. § 2920.1–2(b)(2). Defendant shall also submit a new proposed penalty due to the timing of this Order.

Finally, defendant also asserts plaintiffs should perform the necessary reclamation of the site, including rehabilitating and stabilizing the site by re-contouring any surface disturbance to a final slope and configuration approximating the natural terrain, and by re-vegetating the disturbed land with species native to the area. The court agrees with this remedy and finds if plaintiffs fail to meet this obligation, they shall be liable to the United States for such reclamation costs.

---

**3.** The procedural history of this case at the administrative level is somewhat complex. The IBLA denied the plaintiffs' request for a stay pending appeal with regard to their 1996 appeal of Judge Sweitzer's decision on the validity of the mining claim. However, the IBLA granted plaintiffs' request for a stay pending appeal with regard to their 1997 appeal of the trespass decision. The stay granted in 1997 only applied to the trespass decision, and did not apply to Judge Sweit-

zer's decision declaring Orestimba # 1 null and void.

**4.** It is undisputed the United States owns the lands at issue and has the authority to manage those lands, including the authority to determine the validity of mining claims. *See* United States's Motion (# 20) at 16–17.

**5.** The court notes plaintiffs have offered nothing in rebuttal.

### 3. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs focus the majority of their summary judgment motion on their theory that BLM employees purposefully segregated land which included the Orestimba # 1 Placer Mining Claim without following applicable regulations concerning public notice. The court, however, has already addressed this issue in its analysis of defendant's motion for summary judgment. To the extent plaintiffs raise an Administrative Procedure Act challenge to the 1970 segregation, this challenge is time-barred. Furthermore, to the extent plaintiffs raise other claims, the United States has not waived its sovereign immunity and plaintiffs have not demonstrated otherwise.

In addition, plaintiffs also attempt to raise for the first time that they have complied with the provisions of 30 U.S.C. § 38 and imply this provision gives them both the possessory rights they seek and the right to a patent. The court, however, finds this argument unpersuasive. *See* Defendants' Opposition (# 25) at 5–7.

Plaintiffs' Motion for Summary Judgment is denied.

### Conclusion

The court finds plaintiffs are trespassing on a forty acre parcel of land owned by the United States which is located near Carson City, Nevada, and is described as the Southwest quarter of the Southeast quarter of Section 14, Township 15 North, Range 20 East, Mount Diablo Meridian ("the site"). Plaintiffs have no legal interest in this site and no authority to occupy or use it. From earlier agency decisions, plaintiffs are aware their mining claims have been declared null and void and they have no right to occupy or use this site.

Accordingly, **IT IS ORDERED** that the United States's Motion for Summary Judgment (# 20) is *GRANTED* with respect to both plaintiffs' Causes of Action and BLM's Counterclaims.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Summary Judgment (# 21) is *DENIED.*

**IT IS FURTHER ORDERED** that plaintiffs, Rocky Conner, Ray Conner, and Frances Conner, are enjoined from using or occupying the site or any other land owned by the United States unless they obtain the appropriate governmental authorization to do so.

**IT IS FURTHER ORDERED** that plaintiffs shall remove themselves, all buildings, structures, mobile homes, mining equipment, hazardous materials or waste (including buried tanks), and items of personal property from the site within *60 days* from the date this Order is entered.

**IT IS FURTHER ORDERED** that plaintiffs shall rehabilitate and stabilize the site by re-contouring any surface disturbance to a final slope and configuration approximating the natural terrain, and by re-vegetating the disturbed land with species native to the area.

**IT IS FURTHER ORDERED** that if the plaintiffs fail to remove their buildings, structures, mobile homes, mining equipment, and items of personal property from the site within *60 days* from the date this Order is entered, anything left will become the property of the United States, and the United States will be authorized to remove these things from the site and to dispose of them in the same manner as abandoned or surplus property.

**IT IS FURTHER ORDERED** that the plaintiffs shall not interfere with, obstruct or otherwise impeded the United States from removing buildings, structures, mobile homes, mining equipment, and items of personal property from the site, if plaintiffs fail to remove them within *60 days* from the date this Order is entered.

**IT IS FURTHER ORDERED** that defendant shall resubmit its calculated fair market rental value and administrative costs associated with plaintiffs' unlawful use of the site. In addition, if the plain-

tiffs do not remove the buildings, structures, mobile homes, mining equipment, and items of personal property from the site, or if the plaintiffs do not remove hazardous materials or waste from the site, or if the plaintiffs do no rehabilitate the site in the manner set forth above, the United States shall be authorized to submit, by separate motion, an itemization of the costs incurred in performing those tasks and reasonable costs and fees shall be awarded to the United States after consideration of any subsequent motion.