In accordance with the Memorandum filed herewith,

**IT IS HEREBY ORDERED** that defendants' motion for partial summary judgment on Count I on the issue of damages (Doc. No. 139) is granted.

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for summary judgment for appropriate equitable relief (Doc. No. 139) is denied.

**IT IS FURTHER ORDERED** that plaintiff may file a motion for the award of a penalty and fees within thirty days of this date.

State of **MISSOURI ex rel., Jeremiah W. NIXON, Plaintiff,**

v.

**SECRETARY OF THE INTERIOR, et al., Defendants.**

**No. 00–4149–CV–C–5.**

United States District Court, W.D. Missouri, Central Division.

June 18, 2001.

William J. Bryan, Missouri Attorney General's Office, Jefferson City, MO, Theodore A. Kardis, Missouri Attorney General's Office, Jefferson City, MO, for plaintiff.

Jane P. Davenport, Environmental & Natural Resources Division, U.S. Dept. of Justice, Washington, DC, for defendants.

## ORDER

LAUGHREY, District Judge.

Pending before the Court are the parties' cross motions for summary judgment. The parties have agreed that there are no factual issues in dispute and the cross motions can be decided as a matter of law. The parties have also stipulated that Plaintiff's request for an injunction concerning the Section 7 consultation provision of the Endangered Species Act is moot [Stip. ¶ 16]. After considering the parties' briefs, the Court denies the Plaintiff's motion and grants Defendants' motion.

### I. Factual Background

The following facts are uncontroverted. On May 28, 1985, the Secretary of the Interior ("Secretary") and the U.S. Fish & Wildlife Service ("Service") listed the interior population of the least tern as an endangered species under the Endangered Species Act ("Act"). The least tern is a small bird that formerly was well distributed in the Mississippi basin. On September 6, 1990, the Secretary and the Service listed the pallid sturgeon under the Act as an endangered species. The pallid sturgeon is a large fish known only to occur in the Missouri River, the lower Yellowstone River and the Mississippi River, downstream of the Missouri River. The Secretary has identified the U.S. Army Corps of Engineers' ("Corps") operation of the Missouri River mainstream dams and reservoirs as a potential threat to the interior population of the least tern and pallid sturgeon.

When the interior population of the least tern and the pallid sturgeon were listed as endangered species, the Service did not designate critical habitat for the two species, nor did the Service extend the time allowed for designating the critical habitat. Rather, it made a finding that it was not prudent to identify critical habitat for the interior population of the least tern or the pallid sturgeon and further found that the critical habitat of the pallid sturgeon was not determinable. At this time, the Service has still not designated and does not intend to designate critical habitat for the interior population of the least tern or the pallid sturgeon.

The Service has participated in various meetings with the Corps to discuss Missouri river operations and the interior population of the least tern and the pallid sturgeon. These meetings have been open to the public. On November 30, 2000, the Service issued a final biological opinion on the Corps' operation of the Missouri River Main Stem Reservoir System, operation of maintenance of the Missouri River Bank Stabilization and Navigation Project and operation of the Kansas River Reservoir System.

### II. Discussion

#### A. Designation of Critical Habitat

The Endangered Species Act ("ESA") provides that "to the maximum extent prudent and determinable," a designation of critical habitat for a species must be made concurrently with the determination that the species is an endangered species. 16 U.S.C. § 1533(a)(3). The term "critical habitat" of an endangered species refers to the following:

(i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 4 of this Act on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 4 of this Act upon a determination by the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A). The Secretary must designate and revise critical habitat based on the best available scientific data and must take into account how the designation will impact the economy and other relevant considerations. 16 U.S.C. § 1533(b)(2).

The statutory language "to the maximum extent prudent and determinable" gives rise to two exceptions to the general rule that the Secretary must designate critical habitat concurrently with the determination that the species is endangered. This language is not defined in the ESA, however, regulations and case law have attempted to define the terms.

 According to the applicable regulation, designation is not prudent when "[t]he species is threatened by taking or other human activity, and identification of critical habitat can be expected to increase the degree of such threat to the species, or ... [s]uch designation of critical habitat would not be beneficial to the species." 50 C.F.R. § 424.12(a)(1). If the Service determines that a critical habitat is "not prudent," critical habitat determination for a listed species is not required. A "not prudent" decision is a final, reviewable agency action. *Natural Resources Defense Coun-*

*cil v. U.S. Dept. of the Interior,* 113 F.3d 1121, 1124 (9th Cir.1997).

A designation is not determinable when "[i]nformation sufficient to perform required analyses of the impacts of the designation is lacking, or ... [t]he biological needs of the species are not sufficiently well known to permit identification of an area as critical habitat." 50 C.F.R. § 424.12(a)(2). Under the Act, if the Service finds the critical habitat to be "not determinable," the final critical habitat designation may be postponed for one additional year. 16 U.S.C. § 1533(b)(6)(C). If either the "not prudent" or "not determinable" exception is invoked in order to list a species without designating its critical habitat, the reasons for not designating must be stated in the publication of the proposed and final rules listing a species. 50 C.F.R. § 424.12(a).

In reaching a critical habitat determination, the Service must balance the benefits derived from designating the critical habitat against the potential adverse consequences to the species from increased public antagonism and threats caused by "taking or other human activity." 49 Fed. Reg. 38,900 (1984); 50 C.F.R. § 424.12(a)(1)(i). If designation of critical habitat provides no net benefit to the conservation of the species, then the Service may forgo designation of the critical habitat. *Id.*

In the instant case, the Service declined to specify critical habitat for the interior least tern on the basis that it would not be prudent to do so in its final rule listing the tern as an endangered species. The Service justified its decision by alleging that specifying critical habitat would cause an increased threat to the tern and would provide no benefit. Specifically, the Service stated that "there is no demonstrable overall benefit to the tern in designating critical habitat." Moreover, the Service

indicated that "[a]ffected land management agencies and other involved parties are aware or will be notified of the location of areas needing special management to accommodate the needs of the tern. No additional notification benefits would accrue from a critical habitat designation beyond those from the listing." The Service explained that the inferior least tern is a wide ranging species, therefore, its occupied habitat would be difficult to delineate and could vary over time. Moreover, the Service stated that increased vandalism and taking could occur if the critical habitat was designated. 50 Fed.Reg. 21,784 (1985). The Service and Secretary published this decision on May 28, 1985.

With regard to the pallid sturgeon, the Service supported its decision to forgo designation of critical habitat based on its determination that critical habitat was not presently determinable or prudent for the species. The Service explained that very little is known about the species; thus, it was unable to adequately demonstrate any specific areas as critical to its survival. The Service also justified its decision with the "increased threat" rationale. In its final rule designating the pallid sturgeon as an endangered species, the Service declared:

> Even if critical habitat could be identified, it may not be prudent to identify it to the public ... [T]he pallid sturgeon is a large sturgeon and might be sought by sport fishermen as a trophy specimen. Furthermore, sturgeon roe may be harvested as caviar. Publication of critical habitat maps and descriptions in the Federal Register could negatively impact the species by stimulating interest in the pallid sturgeon, making it more vulnerable to taking, and increasing enforcement problems.

55 Fed.Reg. 36,641 (1990). The Service and Secretary published this decision on September 6, 1990.

## B. Statute of Limitations

■■■ The Defendants assert that the Court must dismiss the State's case because the relevant statute of limitations has run, therefore, the Court does not have jurisdiction to hear the matter. 28 U.S.C. § 2401(a) provides in relevant part that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." That section is the general statute of limitations applicable to federal agency actions. *See e.g., Wind River Mining Corp. v. United States,* 946 F.2d 710, 715 (9th Cir.1991). The statute ensures that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Section 2401 is not a waiver of sovereign immunity; instead, it is a condition upon which the United States may be sued. *United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). It is to be strictly observed and not easily implied or overridden with exceptions. *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Moreover, the statute of limitations is not a waivable defense, but a jurisdictional one. *Sisseton–Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, North Dakota and South Dakota v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990).

■■■ A plaintiff's cause of action challenging a final regulation accrues "when the regulation was formally issued, namely when it first appeared in the Federal Register." *Florida Keys Citizens Coalition, Inc. v. West,* 996 F.Supp. 1254, 1256 (S.D.Fla.1998) (citing *Wind River Mining,* 946 F.2d at 715). In the instant case, the State of Missouri's Complaint was filed on

August 22, 2000, a date well beyond the six year period established in 28 U.S.C. § 2401. The regulation for the interior least tern was published on May 28, 1985; thus, the six year period ran on May 29, 1991. Similarly, the regulation for the pallid sturgeon was published on September 6, 1990, therefore, the statute of limitations ran on September 7, 1996. These publications constituted final agency action that could be challenged once made. *See Natural Resources Defense Council v. U.S. Dept. of the Interior,* 113 F.3d 1121, 1124 (9th Cir.1997) (indicating that a "not prudent" critical habitat determination is a final agency action that is reviewable under the APA). Because this complaint was filed more than six years after the Service and Secretary published its decisions, the Defendants contend that the Court does not have jurisdiction to hear the matter.

The State does not dispute that over six years has passed since the publications of the final decisions regarding the least inferior tern and the pallid sturgeon. However, it argues that a key provision of the Administrative Procedure Act applies in the instant case. 5 U.S.C. § 706(1) provides in relevant part that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." In *American Canoe Ass'n, Inc. v. U.S. E.P.A.,* 30 F.Supp.2d 908, 913–14 (E.D.Va. 1998), the plaintiffs sought review of the EPA's failure to approve or disapprove a "continuing planning process" submitted to the EPA by the State of Virginia in 1977. The EPA was required by the Clean Water Act to approve or disapprove such submissions within 30 days. *Id.* at 914. The court found that the requirement was a non-discretionary, mandatory duty. *Id.* at 925–26.

The court noted that the plaintiffs would have been barred from bringing the suit under the applicable statute of limitations, 28 U.S.C. § 2401, if the EPA had approved the plan at any time during 1987 or the four and a half years following. *Id.* at 925. However, the court concluded that the plaintiffs § 706(1) claim of unreasonable delay was not time-barred, "since application of a statute of limitations to a claim of unreasonable delay is grossly inappropriate, in that it would mean that EPA could immunize its allegedly unreasonable delay from judicial review simply by extending that delay for six years." *Id.* The court explained that such a delay was "better understood as a continuing violation, which plaintiffs may challenge at any time provided the delay continues." *Id.*

The State also relies on the decision reached in *Forest Guardians v. Babbitt,* 174 F.3d 1178 (10th Cir.1999). In *Forest Guardians,* the administrative process was set in motion in 1991 to list the Rio Grande silvery minnow as an endangered species and designate its critical habitat. *Id.* at 1181. When the final rule was published, it did not designate critical habitat for the minnow. *Id.* The plaintiffs brought an action in federal court to compel the Secretary to designate the critical habitat and the Secretary asked the district court to stay the action because of financial impossibility. *Id.* The district court did stay the case and on appeal, the Tenth Circuit reversed. *Id.*

The Tenth Circuit determined that if the Secretary "unlawfully withheld agency action or unreasonably delayed it at a time when [Congress'] moratorium [on spending] was not in effect, we must compel the Secretary to perform the mandatory duties required by the ESA." *Id.* at 1189. The court explained that "when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline."

In response, the Defendants assert that neither of the cases cited in support of the State's argument demonstrate that the instant case falls within the parameters of 5 U.S.C. § 706(1). In *American Canoe*, the plaintiffs brought suit in part alleging that the U.S. Environmental Protection Agency unreasonably delayed action under the Clean Water Act. 30 F.Supp.2d at 909. Specifically, the plaintiffs objected to the EPA's failure to review Virginia's required continuing planning process. However, they argued alternatively and inconsistently that if the EPA had approved Virginia's continuing planning process, it did so without adequate notice and a hearing. As to this second claim, the court found the six year statute of limitations had run, because the claim was based on some action allegedly taken by the EPA more than six years earlier. On the other hand, the statute of limitations had not run on plaintiffs' claim that the EPA had failed to do anything to review Virginia's continuing planning process because the failure to make any review was a continuing violation of the EPA's mandatory obligation.

In *Forest Guardians*, both parties acknowledged that the Service had not made a critical habitat determination for the silvery minnow. The Service had simply said it lacked funds to do the evaluation necessary to comply with its obligation under the Endangered Species Act and asked the court to rule that financial exigency was a valid excuse for failing to comply. 174 F.3d at 1181. As in *American Canoe*, the Service made no decision. Furthermore, in *Forest Guardians*, the statute of limitations issue was not raised by the parties or addressed by the court. The Tenth Circuit's position on the statute of limitations issue is therefore unknown.

■ The instant case is distinguishable from *American Canoe* and *Forest Guardians* because the Service and the Secretary did make a decision concerning the critical habitat designation. They decided that identification of the critical habitat of the least tern and the pallid sturgeon was not prudent. It was further found that the critical habitat of the pallid sturgeon was not determinable.

The court also notes that the State of Missouri did not file suit pursuant to 5 U.S.C. § 706(1) claiming that the Service had unreasonably delayed a decision about critical habitat. Instead, it explicitly challenged the Service's critical habitat designation for the interior least tern and the pallid sturgeon as final agency actions under 5 U.S.C. § 706(2). The Complaint indicated that "The defendants' decision not to designate critical habitat was and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A)." Complaint, ¶ 39. The Complaint does not include an allegation that the Service unlawfully withheld or unreasonably delayed action in violation of 5 U.S.C. § 706(1). Finally, the bifurcated structure of 5 U.S.C. § 706 makes it clear that Congress understood that there is a distinction between a failure to act and acting in an arbitrary and capricious manner. In this case the Service and the Secretary took affirmative action to not designate critical habitat and a claim challenging that action would be pursuant to 5 U.S.C. § 706(2), as plead by the State.

Finally, the Court wishes to make clear that it has not decided that a finding of "not prudent" or "not determinable" permanently insulates the Secretary and the Service from making a designation of a critical habitat. The Court has merely granted summary judgment based on its conclusion that a finding of "not determinable" or "not prudent" starts the statute of limitation to run at the time the decision is made. In addition, the factual record before the Court does not support a finding

that circumstances have changed since the Secretary and the Service made its finding in 1985 and 1990. Nor have the parties identified any law which imposes a mandatory obligation on the Defendants to revisit their earlier determination of "not prudent" and "not determinable."

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment [Doc. 12] is DENIED. It is further

ORDERED that Defendants' Motion for Summary Judgment [Doc. 17] is GRANTED.