**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

COMANCHE NATION OF
OKLAHOMA,

    Plaintiff - Appellant,

v.

RYAN ZINKE, Secretary, U.S.
Department of the Interior; JAMES
CASON, Acting Deputy Secretary, U.S.
Department of the Interior; JONODEV
CHAUDHURI, National Indian Gaming
Commission; EDDIE STREATER,
Regional Director, Bureau of Indian
Affairs, Eastern Oklahoma Region,

    Defendants - Appellees.

No. 17-6247
(D.C. No. 5:17-CV-00887-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

    Comanche Nation appeals the district court's denial of its motion for a

preliminary injunction. We take the view of the district court that Comanche Nation

is unlikely to succeed on the merits of its challenge to a decision by the Secretary of

the Interior ("the Secretary") to take land into trust for the benefit of Chickasaw

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Nation and approve the land for gaming. Exercising jurisdiction under 28 U.S.C. § 1292(a), we affirm.

## I

In June 2014, Chickasaw Nation submitted an application requesting that the Department of the Interior take approximately thirty acres of land near Terral, Oklahoma (the "Terral site") into trust for the tribe. Chickasaw Nation intends to use the Terral site, located 45 miles from a gaming facility operated by Comanche Nation, for a casino. After reviewing the application, the Secretary determined that: (1) Chickasaw Nation does not have a reservation; and (2) the proposed site is within the boundaries of its former reservation in Oklahoma. Based on these determinations, the Secretary concluded that the subject land could be taken into trust for the tribe under the Indian Reorganization Act ("IRA") and 25 C.F.R. Part 151. The Secretary also determined the land was eligible for gaming under the Indian Gaming Regulatory Act ("IGRA") and 25 C.F.R. Part 292.

Formal transfer of the Terral site occurred in January 2017, and in the same month a Finding of No Significant Impact ("FONSI") was issued based on an Environmental Assessment ("EA") conducted pursuant to the National Environmental Policy Act ("NEPA"). Notice of the trust acquisition was published later that year. Land Acquisitions; The Chickasaw Nation, 82 Fed. Reg. 32,867 (July 18, 2017).

Comanche Nation commenced an action in the United States District Court for the Western District of Oklahoma challenging the Secretary's actions. It brought

2

claims under the Administrative Procedure Act ("APA") and NEPA seeking declaratory and injunctive relief. Shortly after filing its complaint, Comanche Nation moved for a preliminary injunction to prevent Chickasaw Nation from opening its casino on the Terral site.[1] The district court denied that motion for lack of likely success on the merits, and Comanche Nation appealed.

## II

Our review of the denial of a preliminary injunction is for abuse of discretion. Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007). "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings." Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006).

> To obtain a preliminary injunction, a moving party must show:
>
> (1) that it has a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the preliminary injunction if issued will not adversely affect the public interest.

Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1246 (10th Cir. 2001). "It is well settled that a preliminary injunction is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is clear and unequivocal."

---

[1] At oral argument, the parties indicated that the casino is now constructed and open. Nevertheless, this case is not moot because an injunction prohibiting operation of the casino could issue. See Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010) ("When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." (quotation omitted)).

Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003) (quotation omitted).

## A

Judicial review of the Secretary's decision to take the Terral site into trust under IRA and its associated regulations, 25 C.F.R. Part 151, is conducted pursuant to the APA. See McAlpine v. United States, 112 F.3d 1429, 1435 (10th Cir. 1997). So also is the Secretary's determination that the site is eligible for gaming under IGRA and its associated regulations, 25 C.F.R. Part 292. See Kansas v. United States, 249 F.3d 1213, 1220 (10th Cir. 2001). Under the APA, we may set aside a decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Comanche Nation contends that the Secretary's decision taking the Terral site into trust for gaming purposes is invalid because it did not determine that Chickasaw Nation exercised governmental authority over the parcel prior to the acquisition. We review the background statutory and regulatory scheme that governs the Secretary's acquisition of trust land for tribal gaming to provide context for our analysis.

IRA grants the Secretary authority to acquire land in trust for Indian tribes and individuals "within or without existing reservations." 25 U.S.C. § 5108. Under regulations promulgated in 1980, see Land Acquisitions, 45 Fed. Reg. 62,034 (Sept. 18, 1980), trust acquisitions are authorized if the "property is located within the exterior boundaries of the tribe's reservation or [is] adjacent thereto." 25 C.F.R. § 151.3(a)(1). The term "reservation" is defined as an

4

area of land over which the tribe is recognized by the United States as having governmental jurisdiction, except that, in the State of Oklahoma . . . reservation means that area of land constituting the former reservation of the tribe as defined by the Secretary.

§ 151.2(f). Outside of Oklahoma, a reservation is generally an "area of land over which the tribe is recognized by the United States as having governmental jurisdiction." Id. But in Oklahoma, "reservation" means "that area of land constituting the former reservation of the tribe as defined by the Secretary," id., with no governmental jurisdiction requirement.

IGRA governs gaming on "Indian lands," 25 U.S.C. § 2710, defined to include property that "is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power," § 2703(4)(B). The Act generally prohibits gaming on "lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988." § 2719(a). However, the Secretary may permit gaming on so called after-acquired land if a tribe had no reservation on October 17, 1988, and "such lands are located in Oklahoma" and "are within the boundaries of the Indian tribe's former reservation, as defined by the Secretary." § 2719(a)(2)(A)(i). This provision is referred to as the "Oklahoma exception."

The Oklahoma exception delegates to the Secretary the authority to define "former reservation," see id., and the Secretary did so in 2008. See Gaming on Trust Lands Acquired After October 17, 1988, 73 Fed. Reg. 29,354 (May 20, 2008). The regulation at issue defines "former reservation" as "lands in Oklahoma that are within the exterior

5

boundaries of the last reservation that was established by treaty, Executive Order, or Secretarial Order for an Oklahoma tribe." 25 C.F.R. § 292.2. During the rulemaking process, other alternatives were proposed but not adopted.

We agree with the district court that Comanche Nation is unlikely to prevail on the merits of its APA challenge to these regulations. As an initial matter, the claim appears to be untimely. Facial challenges to regulations are subject to a six-year statute of limitations. See 28 U.S.C. § 2401(a). The regulations relevant to this case were promulgated in 1980 and 2008. Gaming on Trust Lands Acquired After October 17, 1988, 73 Fed. Reg. 29,354 (May 20, 2008); Land Acquisitions, 45 Fed. Reg. 62,034 (Sept. 18, 1980). Publication in the federal register generally starts the limitations period for facial challenges. See George v. United States, 672 F.3d 942, 944 (10th Cir. 2012) ("[P]ublishing a regulation in the Federal Register must be considered 'sufficient to give notice of [its] contents' to 'a person subject to or affected by it.'" (quoting 44 U.S.C. § 1507)); Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv., 112 F.3d 1283, 1287 (5th Cir. 1997) (limitations period for a facial challenge to a regulation begins to run with publication in the Federal Register).

Comanche Nation insists that it is advancing an as-applied challenge. However, this is not an accurate characterization of the claim. Comanche Nation does not allege that the Secretary misapplied § 292.2 or § 151.2(f) as they are written to Chickasaw Nation's trust and gaming application, but rather that the regulations themselves are contrary to law or are arbitrary because the definition of "former reservation" does not include a requirement that the tribe have "governmental

6

jurisdiction" over land before it is taken into trust for gaming. Comanche Nation's APA claim thus constitutes a facial challenge to § 292.2 or § 151.2(f) because it would apply to all parties. See Colo. Right to Life Comm. v. Coffman, 498 F.3d 1137, 1146 (10th Cir. 2007) ("A facial challenge considers [a regulation's] application to all conceivable parties, while an as-applied challenge tests the application of that [regulation] to the facts of a plaintiff's concrete case.").[2]

Comanche Nation argues that its claim fits within a narrow exception to the six-year statute of limitations that the Ninth Circuit has adopted. In Wind River Mining Corp. v. United States, 946 F.2d 710 (9th Cir. 1991), that court concludes that if "a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." Id. at 715. Assuming this court were to adopt that exception, we question whether it would apply to the present facts. The Wind River exception would not apply to "a policy-based facial challenge to the

---

[2] To the extent that Comanche Nation's claim could be read to allege § 292.2 includes a governmental jurisdiction requirement based on the statutory scheme it implements, we reject the argument. There is no question that the Terral site satisfies the definition of former reservation as adopted by the Secretary in § 292.2. As explained below, IRA and IGRA do not require the Secretary to include a governmental jurisdiction prong in the definition of former reservation.

The claim that § 292.2 conflicts with § 151.2(f) because § 151.2(f) includes a governmental jurisdiction requirement in its definition of "reservation" and § 292.2 does not plainly fails with respect to trust land in Oklahoma. Given that § 151.2(f) provides "in the State of Oklahoma . . . reservation means that area of land constituting the former reservation of the tribe as defined by the Secretary," it does not include a governmental jurisdiction requirement. Thus, there is no conflict between the regulations.

7

government's decision," id., which is the type of challenge Comanche Nation appears to be advancing.

We need not decide whether to apply the Wind River exception because Comanche Nation's claim is unlikely to succeed on the merits irrespective of timeliness. Because this court reviews the interpretation of statutes the Secretary is entrusted to administer under the principles articulated in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), we consider Comanche Nation's position to be untenable. Unless "Congress has directly spoken to the precise question at issue," we ask only "whether the agency's answer is based on a permissible construction of the statute." Id. at 843. We repeat, Congress chose not to define "former reservation" and unambiguously delegated authority to do so to the Secretary. § 2719(a)(2)(A)(i) (referring to lands in Oklahoma "within the boundaries of the Indian tribe's former reservation, as defined by the Secretary" (emphasis added)). That definition of former reservation receives "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844.[3]

---

[3] We reject Comanche Nation's arguments that the Secretary is not entitled to Chevron deference. Comanche Nation fails to support its argument that the definition of "former reservation" conflicts with a prior interpretation, see Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 154 (2012), merely because it differs from the version originally proposed. To adopt such a view would discourage agencies from engaging in reasoned decision-making through the notice and comment process. Nor is the definition a "convenient litigating position," id. (quotations omitted), as it was not advanced for the first time during litigation, but promulgated pursuant to ordinary rulemaking procedures.

Comanche Nation does not identify any statutory language in either IRA or IGRA that contravenes the Secretary's treatment of former reservations. Nothing in the text of those statutes suggests that a tribe must have governmental jurisdiction over land within its former reservation to make it eligible for the Oklahoma exception. Instead, Comanche Nation argues that the regulation contravenes Congress' intent by treating Oklahoma tribes more favorably than non-Oklahoma tribes, in that only the latter are required to demonstrate governmental jurisdiction. But the Secretary does not impose an independent requirement on non-Oklahoma tribes to make an affirmative showing of governmental jurisdiction on a tract-by-tract basis. The term "governmental jurisdiction" is included in the regulatory definition of "reservation." § 151.2(f). And the Bureau of Indian Affairs ("BIA") presumes that a tribe has governmental jurisdiction over any parcel within the borders of its reservation. See Atkin Cty. v. Bureau of Indian Affairs, 47 I.B.I.A. 99, 106-07 (June 12, 2008).

Comanche Nation points to the legislative history of IGRA, which indicates that the Oklahoma exception was deemed necessary to treat "Oklahoma tribes the same as all other Indian tribes." S. Rep. No. 99-493, at 10 (1986). However, the same report expressly recognizes the need for a different standard for Oklahoma tribes in light of the "unique historical and legal difference between Oklahoma and tribes in other areas." Id. It indicates that Congress chose the boundaries of such tribes' former reservations to bar them "from acquiring land outside their traditional areas for the express purpose of establishing gaming enterprises." Id. The Secretary's interpretation of "former reservation" is entirely consistent with that goal.

9

The statutory text of the Oklahoma exception expressly delegates to the Secretary responsibility for defining "former reservation." § 2719(a)(2)(A)(i). And the regulatory definition adopted by the Secretary, land "within the exterior boundaries of the last reservation that was established by treaty, Executive Order, or Secretarial Order for an Oklahoma tribe," § 292.2, is consistent with the everyday meaning of the term "former reservation." We agree with the district court that at a minimum the Secretary's interpretation is reasonable, and therefore controls. Chevron, 467 U.S. at 844.

Comanche Nation also contends that the Terral site may be ineligible for gaming if the Chickasaw Nation's reservation was never actually disestablished. But its sole support for this proposition is Murphy v. Royal, 875 F.3d 896 (10th Cir. 2017), cert. granted 138 S. Ct. 2026 (2018). Disestablishment analysis is tribe-specific depending on the particular facts of each individual case. See Wyoming v. U.S. Envtl. Prot. Agency, 875 F.3d 505, 512-13 (10th Cir. 2017) (noting "it is settled law that some surplus land acts diminished reservations, and other surplus land acts did not" depending on "the language of the Act and the circumstances underlying its passage" (quotations omitted)). Our Murphy panel concluded the Creek Reservation remains extant, but it did not address the status of the Chickasaw Reservation at all. Comanche Nation's citation to Murphy falls well short of demonstrating a likelihood of success on the merits.

Moreover, whether Chickasaw Nation's reservation in Oklahoma has been disestablished likely has no effect on the outcome of this case. Were the Chickasaw Nation's reservation not disestablished, the Terral site would remain within the bounds of that reservation, in which case, the Secretary could conduct an "on-reservation"

10

acquisition.  See §§ 151.3(a)(1), 151.2(f); see also Atkin County, 47 I.B.I.A. at 106-07 (tribes are presumed to have jurisdiction over land within their reservations for purposes of IRA).  The Terral site would also be eligible for gaming because it would be within the boundaries of the reservation as it existed in October, 1988.  § 2719(a)(1).

**B**

We conclude, as well, that Comanche Nation is unlikely to succeed on the merits of its NEPA claim.  NEPA imposes procedural requirements on agencies before they undertake any major action.  Citizens' Comm. to Save Our Canyons v. Krueger, 513 F.3d 1169, 1178 (10th Cir. 2008).  Under certain circumstances, an agency must prepare an environmental impact statement ("EIS") that details the environmental effects of its proposed action.  Greater Yellowstone Coal. v. Flowers, 359 F.3d 1257, 1274 (10th Cir. 2004).  However, if an EA "leads the agency to conclude that the proposed action will not significantly affect the environment, the agency may issue a [FONSI] and forego the further step of preparing an EIS."  Id.

Comanche Nation argues that the Secretary did not take a "hard look" at the environmental impact of the casino project.  See Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 100 (1983).  Yet the record indicates that the BIA completed a detailed EA and issued a FONSI for the trust acquisition of the Terral site for gaming.  Comanche Nation's conclusory allegations that the EA does not comply with Baltimore Gas, that the BIA has a history of failing to comply with NEPA requirements, and that Chickasaw Nation intends to build larger-than-necessary sewer lagoons are not enough to carry the day for obtaining a preliminary

11

injunction. See Heideman, 348 F.3d at 1188 (movant's right to relief must be "clear and unequivocal" (quotation omitted)); see also Krueger, 513 F.3d at 1176 ("A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action.").

Comanche Nation contends the Secretary's NEPA analysis is flawed because it failed to consider the economic effects the new casino would have on Comanche Nation's existing casino. However, "[i]t is well-settled that socioeconomic impacts, standing alone, do not constitute significant environmental impacts cognizable under NEPA." Cure Land, LLC v. U.S. Dep't of Agric., 833 F.3d 1223, 1235 (10th Cir. 2016).

We also reject the argument that the acquisition was arbitrary and capricious because the Secretary failed to consult Comanche Nation. Agencies should consult with "appropriate State and local agencies and Indian tribes." 40 C.F.R. § 1501.2(d). The regulation's use of the term "appropriate" suggests an agency possesses discretion in determining which bodies to consult. See generally Martel-Martinez v. Reno, 61 F.3d 916 (10th Cir. 1995) (table). Comanche Nation again relies solely on socioeconomic effects of the new casino, and for the reasons stated above, that is not enough to show it was necessarily an appropriate consulting tribe in this case.

## III

Because Comanche Nation is clearly unlikely to prevail on the merits, there is no need to address the remaining factors of the test for preliminary injunctions. See

<u>Schrier v. Univ. of Colo.</u>, 427 F.3d 1253, 1262 n.2 (10th Cir. 2005).  The district court's denial of a preliminary injunction is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge